OPINION
{¶ 1} Defendant-appellant, Robert Brewer, appeals from a decision entered by the Clermont County Court of Common Pleas ordering him to undergo the involuntary administration of medication in an effort to restore his competency to stand trial.[1] We affirm the trial court's decision. *Page 2 
 {¶ 2} Appellant was charged with 28 counts of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1) and2907.321(A)(5). After being indicted, appellant filed a suggestion of incompetence as well as a request for a psychiatric evaluation to determine his then existing mental condition and his mental condition at the time of the charged offenses. A psychiatric evaluation was ordered, and on October 22, 2007 appellant was found incompetent to stand trial. Thereafter, appellant was committed to the Summit Behavior Healthcare Center ("Summit") in an effort to restore his competency. However, after being subjected to extensive and varying types of treatment, he was found incompetent to stand trial again on February 14, 2008.
 {¶ 3} Several weeks later, due to his continuous refusal to take any prescribed medications, the state submitted a petition for the Involuntary Administration of Medication. A hearing was held and testimony was heard from Dr. Anthony Whitaker, a forensic psychiatrist with Summit, who had been part of the medical team treating appellant since November 2, 2007. On April 1, 2008, the trial court granted the state's petition for the Involuntary Administration of Medication. Appellant appeals, raising one assignment of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED IN GRANTING THE STATE'S PETITION FOR THE INVOLUNTARY ADMINISTRATION OF MEDICATION."
 {¶ 6} Appellant argues that the trial court erred in permitting the involuntary administration of medication in order to restore his competency to stand trial on 28 counts of pandering obscenity involving a minor. Essentially, appellant asserts that the trial court erred in ordering him to undergo the involuntarily administration of medication without complying with the requirements laid out in Sell v. UnitedStates (2003), 539 U.S. 166, 123 S.Ct. 2174. We disagree. *Page 3 
 {¶ 7} Before discussing the principles established by the United States Supreme Court in Sell, we will examine Ohio law pertaining to the involuntary administration of medication to an incompetent criminal defendant. In Ohio, the involuntary administration of medication to a criminal defendant is governed by R.C. 2945.38(B)(1)(c), which states:
 {¶ 8} "If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital or facility, the managing officer of the institution, the director of the program, or the person to which the defendant is committed for treatment or continuing evaluation and treatment under division (B)(1)(b) of this section determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer, managing officer, director, or person to which the defendant is committed for treatment or continuing evaluation and treatment may petition the court for authorization for the involuntary administration of medication. The court shall hold a hearing on the petition within five days of the filing of the petition if the petition was filed in a municipal court or a county court regarding an incompetent defendant charged with a misdemeanor or within ten days of the filing of the petition if the petition was filed in a court of common pleas regarding an incompetent defendant charged with a felony offense. Following the hearing, the court may authorize the involuntary administration of medication or may dismiss the petition."
 {¶ 9} R.C. 2945.38(B)(1)(c) does not contain any specific standards for deciding whether the involuntary administration of medication should be ordered. State v. Upshaw, 166 Ohio App.3d 95, 2006-Ohio-1819, ¶ 23. However, the United States Supreme Court recognized that an individual has a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," and that such an interest may be overcome only by an "essential" or "overriding state interest."Washington v. Harper (1990), 494 U.S. 210, *Page 4 
221-222, 110 S.Ct. 1028; Riggins v. Nevada, 504 U.S. 127, 134,112 S.Ct. 1810; Sell at 178-79.
 {¶ 10} Based on the foregoing, the United States Supreme Court determined in Sell v. United States that: "[T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." Id. at 179. As a result, the Supreme Court formulated a four-part test to determine whether the involuntary administration of medication may be used in order to render a defendant competent to stand trial where he does not pose a threat to himself or to the community. United States v.Green (C.A.6, 2008), 532 F.3d 538, 545.
 {¶ 11} An order permitting the involuntary administration of medication, also known as a "Sell order," requires the government to present clear and convincing evidence of the following: (1) the existence of an "important" governmental interest; (2) that involuntary medication will "significantly further" the government interest; (3) that involuntary medication is "necessary" to further those interests; and (4) that the administration of the drugs must be "medically appropriate." Id., quoting Sell at 180-181. Ohio courts, in applying R.C. 2945.38(B)(1)(c) to the Sell principles, require the trial court to "`find' [that] several factors and sub-factors are present," because "without specific findings, a thorough and appropriate appellate review of the trial court's decision would be impossible." State v.McClelland, Franklin App. No. 06AP-1236, 2007-Ohio-841, ¶ 9.
 {¶ 12} Initially, appellant argues that the trial court erred in its decision ordering the involuntarily administration medicated because the charges are not "serious" enough to *Page 5 
support an important governmental interest in his prosecution. Specifically, appellant claims that the trial court erred in ordering his involuntary medication because (1) his refusal to take medication voluntarily would result in a "lengthy confinement in an institution for the mentally ill," thus falling under the "special circumstances" noted by the Supreme Court in Sell, (2) the charged offenses, i.e., 28 counts of pandering obscenity involving a minor, do not pose a risk to the public, and (3) the state's case against him would not be prejudiced by an indefinite commitment to a mental facility.
 {¶ 13} The existence of an "important" governmental interest is a legal conclusion which requires de novo review. Green at 546.
 {¶ 14} In order for a court to permit the involuntary administration of medication to an incompetent criminal defendant, the court must first determine that the government has an "important" governmental interest in the accused's prosecution by finding that the crime charged is "serious." Sell at 180. The United States Supreme Court, in explaining the first Sell factor, did not indicate which crimes should be considered "serious" or "even outline the considerations a court should take into account when making that determination." Green at 547. Instead, the Supreme Court simply stated: "a court must find thatimportant governmental interest are at stake," and that one important governmental interest is "bringing to trial an individual accused of a serious crime." (Emphasis sic.) Sell at 180.
 {¶ 15} However, despite the lack of clear guidance by the Supreme Court, federal courts, including the Sixth Circuit Court of Appeals, determined that violence alone does not render a crime "serious," nor is it required that the crime at issue be against a "person" or "property."Green at 548, 551. Instead, "whether a crime is `serious' should be determined by its maximum statutory penalty." Id. at 549, citingLewis v. United States (1996), 518 U.S. 322, 326, 116 S.Ct. 2163. As a result, in an effort to determine whether *Page 6 
a crime is "serious" under Sell, some courts look to the potential maximum statutory penalty that may be imposed. Green at 547; See, e.g.,United States v. Evans (C.A.4, 2005), 404 F.3d 227, 237; but, see,United States v. Jarmamillo-Ayala (S.D.Cal. 2007), 526 F.Supp.2d 1094,1101 (finding the "serious" crime analysis under the first Sell factor should not be based on the Sixth Amendment right to a jury trial, or the maximum penalty attached to the offense).
 {¶ 16} A "serious" crime, as defined by the United States Supreme Court, and pursuant to the Ohio Rules of Criminal Procedure, is one in which a defendant may be sentenced to imprisonment for more than six months. See Baldwin v. New York (1970), 399 U.S. 66, 69, 90 S.Ct. 1886; Crim. R. 2.
 {¶ 17} In this case, appellant was indicted on 28 counts of pandering obscenity involving a minor, which included eight counts under R.C. 2907.321(A)(1), a second-degree felony, and another 20 counts under R.C. 2907.321(A)(5), a fourth-degree felony. Here, the mandatory statutoryminimum penalty is sufficient to be considered a serious offense as defined by the United States Supreme Court and Crim. R. 2. See, e.g.,State ex rel. D.B. (Tx.App.2007), 214 S.W.3d 209, 212-213. Appellant's eight counts of pandering obscenity under R.C. 2907.321(A)(1), a second-degree felony, each impose a minimum two-year sentence, while his remaining 20 counts of pandering obscenity under R.C. 2907.321(A)(5) each impose a minimum six-month sentence. See R.C. 2929.14(A)(2) and2929.14(A)(5). As a result, because each of appellant's charged crimes impose at least a minimum six-month sentence, his charged offenses are "serious." Therefore, the government has an "important" governmental interest at stake in his prosecution for the 28 counts of pandering obscenity involving a minor.
 {¶ 18} Further, although we find that the state has an "important" governmental interest to prosecute appellant on his "serious" criminal charges, we also note that there *Page 7 
are special circumstances which could, but do not, "lessen the importance of that interest." Sell at 180.
 {¶ 19} In Sell, the Supreme Court, in discussing the "important" governmental interest factor, also required lower courts to "consider the facts of the individual case in evaluating the Government's interest in prosecution," and to evaluate the effect of "special circumstances."Sell at 180. Further, the Supreme Court explained that "special circumstances" exist if the "defendant's failure to take drugs voluntarily * * * [would lead to a] lengthy confinement in an institution for the mentally ill," because the confinement "would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." Id. However, in concluding, the Supreme Court also noted that the "potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution." Id.
 {¶ 20} Based on these principles, appellant argues that his refusal to take medication would result in his continued incompetence, which would lead to a lengthy confinement in a mental facility, and therefore, make his risk to the public "minimal if not altogether nonexistent." Appellant also argues that the 28 counts of pandering obscenity involving a minor does not pose an overwhelming risk to the public, and that his indefinite confinement would not prejudice the state's prosecution against him. However, despite his claims, appellant fails to provide this court with any supporting evidence besides mere speculation coupled with a recitation of the applicable legal principles provided by the Supreme Court in Sell and outlined by this court above. The trial court, in ordering appellant to undergo the involuntary administration of medication, found that "there are no special circumstances which would lessen [the government's interest] in the present case." We find no error in this conclusion, and therefore, appellant's first argument is without merit. *Page 8 
 {¶ 21} Appellant also challenges the trial court's conclusions on the second and fourth Sell factors; namely, whether the common pleas court erred in concluding that the involuntary administration of medication would significantly further the government's interest and whether such involuntary administration is medically appropriate. In turn, because these remaining considerations consist of factual findings, the trial court's conclusion will be affirmed unless it is clearly erroneous.Green at 552. A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Green at 552, quotingTran v. Gonzalez (C.A.6, 2006), 447 F.3d 937, 943.
 {¶ 22} After determining that the involuntary administration of medication will further an important governmental interest, the lower court must then find that the "administration of the drugs is substantially likely to render the defendant competent to stand trial" and that "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Green at 552, quoting Sell at 181.
 {¶ 23} Appellant, in regards to the second Sell factor, argues that the state failed to provide sufficient evidence with which the trial court could find a substantial likelihood that the involuntary administration of medication would render him competent to stand trial. Specifically, appellant claims that the evidence presented only indicates that the involuntary administration of medication "might assist" him, and therefore, would be nothing more than an "experiment in the nature of a crap shoot."
 {¶ 24} In finding that the second Sell factor had been satisfied by clear and convincing evidence, the trial court relied on the undisputed testimony of Dr. Anthony Whitaker, an attending forensic psychiatrist who had been treating appellant while he was *Page 9 
committed to Summit. Dr. Whitaker's testimony indicated, and the trial court found, that the prescribed medications would help restore appellant to competency, and that a vast majority of patients have an improved mental status as a result of taking the medications. In fact, he stated that most of the listed medications sought to be administered are successful in 65 to 70 percent of patients, but that one specific drug, Clozapine, was an "ace in the hole" because it is effective nearly 90 percent of the time. Such an undisputed high probability of success certainly meets the "substantial likelihood" requirement mandated bySell. See, e.g., Green at 553 (noting that testimony indicated the medication was more than 90 percent likely to restore appellant's competency satisfies the "substantial likelihood" requirement); see, also, United States v. Gomes (C.A.2, 2004), 387 F.3d 157 (finding a 70 percent chance of defendant being restored to competency with medication is "substantial likelihood").
 {¶ 25} Further, as to the potential side effects of the medication, the trial court noted, and Dr. Whitaker's testimony indicated, that the "doses of each drug [prescribed] were not likely to result in those severe side effects, [and that] if any medication presented side effects which negatively affected the defendant's ability to communicate, think, or generally assist with his defense, the medication would be immediately adjusted or discontinued to abate these negative effects." Based on Dr. Whitaker's testimony, as well as his written report, the trial court found that "the administration of medications is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist his counsel in conducting a trial defense." After reviewing Dr. Whitaker's testimony, we find no error in the trial court's conclusion. Therefore, appellant's second argument is without merit.
 {¶ 26} Finally, appellant, in regards to the fourth Sell factor, argues that the state failed to produce sufficient evidence to support the trial court's finding that the involuntary *Page 10 
administration of medication was medically appropriate, and therefore, in his best medical interest because "forcing medication on [him] could undermine the rapport and trust that [his] treatment team has worked so hard to build."
 {¶ 27} Under the fourth Sell factor, the trial court must conclude that "administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition."Green at 555, quoting Sell at 182.
 {¶ 28} In this case, Dr. Whitaker testified that if appellant was ordered to undergo the involuntary administration of medication it would, among other things, "help him do the things he wants to do in life, that it would help him to * * * be better able to function in the world if he were on the proper medications at the right doses, that it would help in treating his mental illness and help him more to be a better functioning person." His testimony also indicated that the prescribed medications would treat appellant's delusions; namely, appellant's belief that he is a super hero. As a result, Dr. Whitaker's testimony not only indicated that appellant would be able to help in his own defense if properly medicated, but would also help him live and function more effectively, ultimately "mak[ing] his situation better."
 {¶ 29} Further, Dr. Whitaker's testimony indicated that he took appellant's specific condition into account prior to petitioning the court to order the involuntary administration of medication by consulting with appellant's treatment "group leaders," which included a psychologist, therapist, social worker, and other nursing staff, on which medications would best serve him due to his specific mental and physical condition. As a result of this evaluation, Dr. Whitaker determined that Risperdal would be "an effective medication for him [because] for the dose [being given] to him there would be little likelihood that he would get side effects from the medication," and also Depakote, due to appellant's history of seizures. Dr. Whitaker even provided the court with range of doses that would likely *Page 11 
benefit appellant without causing significant side effects. Based on Dr. Whitaker's testimony, the trial court found that "the prescribed treatment is medically necessary and in the defendant's best medical interest in light of his mental condition." We find no error in this conclusion.
 {¶ 30} In light of the foregoing, we find that the trial court did not err in ordering the involuntary administration of medication to appellant in order to render him competent to stand trial. Accordingly, appellant's sole assignment of error is overruled.
 {¶ 31} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Pursuant to Loc. R. 6(A), we have sua sponte removed this appeal from the accelerated calendar. *Page 1