[Cite as *State v. Ramey*, 2019-Ohio-5087.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-642 (C.P.C. No. 18CR-587) |
| v. | : | No. 19AP-643 (C.P.C. No. 18CR-2623) |
| William L. Ramey, Jr., | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on December 10, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*.

APPEALS from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} In these consolidated appeals, defendant-appellant, William L. Ramey, Jr., appeals from a judgment of the Franklin County Court of Common Pleas ordering that he be forced to take certain psychotropic medications to restore competency to stand trial. For the reasons outlined below, we affirm.

{¶ 2} On February 6, 2018, appellant was indicted in Franklin C.P. No. 18CR-587 on two counts of burglary in violation of R.C. 2911.12, both second-degree felonies, and two counts of theft in violation of R.C. 2913.02, both fifth-degree felonies. On June 1, 2018, appellant was indicted in Franklin C.P. No. 18CR-2623 on one count of possession of heroin in violation of R.C. 2925.11, a first-degree felony.

{¶ 3} During the course of the criminal proceedings, the issue of appellant's competency arose, and, by entry filed on March 20, 2019, the trial court found appellant incompetent to stand trial. The court ordered appellant to undergo treatment at Twin Valley Behavioral Healthcare ("Twin Valley") for a period of one year. Upon appellant's refusal to voluntarily take medication prescribed by Twin Valley medical staff, Twin Valley petitioned the trial court for authorization for the involuntary administration of psychotropic medication to appellant. Following a hearing, the trial court issued a judgment entry on April 22, 2019 ordering appellant to take the medication prescribed by Twin Valley and authorizing Twin Valley to involuntarily administer the medication if appellant refused.

{¶ 4} Following appellant's appeal of that order and the parties' subsequent joint motion for an entry of judgment, this court issued a judgment entry on August 14, 2019 in which it sustained appellant's sole assignment of error "by agreement of the parties," reversed the trial court's judgment, and remanded the matter to the trial court "for an evidentiary hearing on whether or not medications administered to appellant will be substantially likely to render the defendant competent to stand trial and, at the same time, whether or not such medications will be substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *State v. Ramey*, 10th Dist. No. 19AP-287 (Aug. 14, 2019 Jgmt. Entry.)

{¶ 5} In accordance with the remand, the trial court held a hearing on September 17, 2019. Thereafter, on September 19, 2019, the trial court issued a judgment ordering appellant to take the prescribed medication and authorizing Twin Valley to administer the medication upon appellant's continued refusal. Appellant timely appealed the trial court's judgment.[1]

{¶ 6} Appellant sets forth a single assignment of error for our review:

> The trial court erred to the prejudice of appellant by failing to make evidence-based findings in ordering appellant to undergo a regimen of forced medication in an effort to restore him to compentence [sic] to stand trial.

---

[1] Franklin C.P. No. 18CR-587 is docketed as 19AP-642; Franklin C.P. No. 18CR-2623 is docketed as 19AP-643. By journal entry filed September 25, 2019, this court sua sponte consolidated the appeals for purposes of record filing, briefing, oral argument, and determination. By journal entry filed October 15, 2019, a majority of the panel assigned to hear this appeal granted appellant's motion to stay execution of judgment pending appeal.

{¶ 7}   At the outset, we note that the Supreme Court of Ohio has determined that "when a trial court orders an incompetent defendant to be forcibly medicated with psychotropic drugs in an effort to restore the defendant to competency, that order is final and appealable." *State v. Muncie,* 91 Ohio St.3d 440, 452 (2001).  In the present case, appellant argues that the trial court erred in permitting the involuntary administration of medication in order to restore his competency to stand trial on the burglary, theft, and possession of heroin charges on which he was indicted.  Appellant essentially asserts that the trial court erred in ordering him to undergo the involuntary administration of medication without complying with the requirements set forth in *Sell v. United States*, 539 U.S. 166 (2003).  We disagree.

{¶ 8}   Before examining the principles established by the United States Supreme Court in *Sell,* we note the statutory basis governing the involuntary administration of medication to a criminal defendant set forth in R.C. 2945.38(B)(1)(c):

> If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer of the institution, the director of the program or facility, or the person to which the defendant is committed for treatment or continuing evaluation and treatment under division (B)(1)(b) of this section determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer of the institution, the director of the program or facility, or the person to which the defendant is committed for treatment or continuing evaluation and treatment may petition the court for authorization for the involuntary administration of medication. The court shall hold a hearing on the petition within five days of the filing of the petition if the petition was filed in a municipal court or a county court regarding an incompetent defendant charged with a misdemeanor or within ten days of the filing of the petition if the petition was filed in a court of common pleas regarding an incompetent defendant charged with a felony offense. Following the hearing, the court may authorize the involuntary administration of medication or may dismiss the petition.

{¶ 9} R.C. 2945.38(B)(1)(c) does not set forth specific standards for a trial court to apply in determining whether to order the involuntary administration of medication to restore a criminal defendant's competence to stand trial. *State v. McClelland,* 10th Dist. No. 06AP-1236, 2007-Ohio-841, ¶ 4; *State v. Brewer,* 12th Dist. No. CA2008-04-040, 2008-Ohio-6193, ¶ 9. However, in *Sell,* the United States Supreme Court addressed whether the "forced administration of antipsychotic drugs to render [a defendant] competent to stand trial unconstitutionally deprive[s] [a defendant] of his [or her] 'liberty' to reject medical treatment." *Id.* at 177. The court determined that "[t]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.* at 179. The Court formulated a four-factor test to determine whether the involuntary administration of medication may be used in order to render a defendant competent to stand trial. *Id.* at 180-81.

{¶ 10} The first factor requires the trial court to find that "important governmental interests are at stake," i.e., prosecuting and punishing an individual who has been accused of a serious crime. *Id.* at 180. The second factor requires the court to conclude that involuntary medication will "significantly further" those concomitant governmental interests. Before so concluding, the court must find that administration of the drugs is both "substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Id.* at 181. The third factor requires the court to conclude that involuntary medication is "necessary" to further the government's interests. In so concluding, the court must find that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Id.* The fourth and final factor requires the court to conclude that administration of the drugs is "medically appropriate," i.e., in the patient's best medical interest in light of his or her medical condition. *Id.* The trial court must make specific findings regarding the factors and sub-factors enunciated in *Sell* because "without specific findings, a thorough and

appropriate appellate review of the trial court's decision would be impossible." *McClelland* at ¶ 9.

{¶ 11} Here, the trial court made all the specific findings required by *Sell*; appellant concedes as much. (Appellant's brief at 5, 6 ("the trial court considered the *Sell* factors"; "[t]he trial court's decision cites the *Sell* factors")). However, appellant challenges the evidence underlying the trial court's finding under the second prong of the *Sell* test, i.e., that "[a]dministration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense in a way that would render the trial unfair." (Sept. 19, 2019 Entry at 2.) Appellant's challenge essentially requires us to review the trial court's finding in this regard to determine whether it is against the manifest weight of the evidence. In so doing, "we remain mindful that judgments supported by some competent, credible evidence addressing all the essential elements of the case will not be reversed on appeal as against the manifest weight of the evidence." *In re J.F.*, 10th Dist. No. 06AP-1225, 2007-Ohio-2360, ¶ 23, citing *In re T.B.,* 10th Dist. 06AP-769, 2006-Ohio-4789, ¶ 7, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.3d 279 (1978).

{¶ 12} At the September 17, 2019 hearing, Gary Davis, M.D., the attending psychiatrist at Twin Valley who prepared the application to authorize forced psychotropic medications (Joint Ex. 1),[2] testified[3] on direct examination that appellant's "working" psychological diagnosis is "schizoaffective disorder" and that "medications were necessary to correct that disorder so that he would become competent to stand trial." (Sept. 17, 2019 Tr. at 7.) Dr. Davis averred that the plan to restore appellant's competency involved the administration of Haldol, one of three antipsychotic medications[4] utilized to aid in "thinking, focus, perception, [and] mood," along with Cogentin to reduce the side effects of Haldol. *Id.* When questioned about the side effects of Haldol, Dr. Davis responded that "the Cogentin would be to prevent things like tremor or muscle contractions." *Id.* at 8. He

---

[2] The application is signed by both Dr. Davis and Dr. Ann Morrison, Chief Clinical Officer at Twin Valley.

[3] Both parties subpoenaed Dr. Davis and stipulated that he would testify as an expert witness. (Sept. 17, 2019 Tr. at 5, 6.)

[4] The two other antipsychotic medications listed in Joint Ex. 1 are Prolixin and Thorazine.

further acknowledged a risk of "sedation" with use of Haldol, but stated that such risk can generally be managed with dosage adjustments and medication changes.  *Id.* at 8, 20.

{¶ 13} Dr. Davis further testified that if Haldol or one of the other psychotropic medications failed to restore appellant to competency, he would consider administering one of several "atypical antipsychotic" medications,[5] which are "less likely to cause some of the motor side effects of the old antipsychotics."  *Id.*  He further averred that those medications also have side effects, including sedation, tremor and muscle contractions, and dizziness, which could be managed "with dosage adjustments" such as "adding a medicine to combat the side effects [or] switching to another medicine."  *Id.* at 9.  Dr. Davis opined that if appellant did not take psychotropic medication, he would "not have any improvement" and "not be restored to competency."  *Id.*  He further testified "within a reasonable degree of psychiatric certainty, that there's substantial likeliness that [appellant] would be rendered competent to stand trial if he does take these medications." *Id.* When questioned about the "substantial unlikeliness" of the side effects interfering significantly with appellant's ability to assist his attorney at trial, Dr. Davis responded that he "would expect the medication side effects not to interfere with [appellant's] ability to work with his attorney and have a fair trial."  *Id.* at 10.   He further opined that there are no reasonable alternative treatments to the use of these medications and that administration of the medications was medically appropriate.

{¶ 14} On cross-examination, counsel for appellant questioned Dr. Davis about the potential side effects of Haldol, including "difficulty with speaking or swallowing," [i]nability to move the eyes," "mask-like face," and "Parkinson-ism," which involves "twisting movements of the body or torso."  *Id.* at 11-12.   Dr. Davis readily acknowledged these potential side effects.  However, he described "difficulty with speaking or swallowing" as "rare," "eye movement" issues as "uncommon" and treatable with Cogentin, "mask-like face" as possible over "weeks to months," and "Parkinson-ism" as "possible."  *Id.* Dr. Davis also acknowledged possible side effects of Cogentin, including "confusion about orientation to time or place," which he asserted "could happen" "[a]t high doses in an older patient."

---

[5]  The "atypical antipsychotic" medications listed in Joint Ex. 1 are Olanzapine, Risperdal, Risperdal Consta, Geodon, Clozapine, Seroquel, and Abilify.

*Id.* at 12. He also acknowledged that he could not predict "precisely what side effects [appellant] would have" were he prescribed the "Cogentin-Haldol mix." *Id.* at 13.

{¶ 15} Dr. Davis testified that the initial administration of the Haldol-Cogentin drug regimen would occur at Twin Valley. Thereafter, if appellant were restored to competence, he might remain at Twin Valley or be transferred to the Franklin County Jail to await trial. Dr. Davis averred that in the latter case, "I think they have nursing staff and physicians that work in the jail" and that it would likely not be a physician from Twin Valley ordering and authorizing the medications. *Id.* at 14. In contrast, if appellant remained at Twin Valley and began exhibiting side effects, the Twin Valley medical staff would adjust the dosages of Haldol or Cogentin, or both, or, if necessary, switch to one of the "atypical antipsychotic" medications. *Id.* at 15-16. Dr. Davis acknowledged that medication adjustments would be difficult to achieve during trial, but opined that he "wouldn't expect" the sudden occurrence of side effects at trial. Indeed, he described this scenario as "pretty unlikely." *Id.* at 20.

{¶ 16} Dr. Davis opined that administration of Haldol typically takes a "[m]atter of weeks" to have the desired medical effect on a patient; discontinuing use abruptly would result in a return of psychiatric symptoms within "weeks, months [or] a year." *Id.* at 18. He further opined that the desired medical effect of Cogentin would occur "in an hour or two," with abrupt discontinuance resulting in "undesirable [e]ffects" to manifest in "hours to a day or two." *Id.* at 19. He acknowledged that the length of time a patient had been on antipsychotic medication or Cogentin would impact the possible return of psychiatric symptoms.

{¶ 17} Counsel for appellant then posed a series of questions concerning the procedures to be employed if appellant were housed at Twin Valley during the trial proceedings. Counsel first asked, "during a trial, Twin Valley would monitor [appellant] for side effects before he left in the morning. Correct?" Dr. Davis responded, "[y]es." *Id.* at 20-21. Counsel then asked "[w]ould there be someone [at trial] to monitor side effects during the day * * * when he's in trial all day long?" *Id.* at 21. Dr. Davis replied, "[n]o, but I don't think that's necessary" because "it would be highly unlikely that [appellant] would suddenly have some new side effects during the day." *Id.* Upon further questioning, he averred, "I suppose it's within the realm of possible, but unlikely." *Id.* Counsel next inquired, "if Mr. Ramey was getting ready to come to court and he was exhibiting symptoms

of * * * Parkinson-ism * * * would Twin Valley still allow him to come to court if those symptoms were present?"  Dr. Davis responded, "I don't know exactly how that would be handled.  I don't think I've ever encountered that situation. * * * I've never seen [side effects] develop * * * like you seem to be talking about, you know, right before they go to court.  It tends to come on over a period of weeks or longer."  *Id.* at 21-22.  Counsel then asked if the side effects "comes on over a period of weeks, and * * * really start to manifest themselves" the day trial commences, "what's the plan at Twin Valley to decide whether or not Mr. Ramey comes to the courthouse or stays at Twin Valley?"  *Id.* at 22.  Dr. Davis responded, "Yeah, I really don't know whose call that is."  *Id.*

{¶ 18}  Counsel then asked several questions concerning the procedures to be utilized if appellant were housed at the Franklin County Jail during the trial.  Counsel first asked if "it would be up to the jail medical staff to administer the medications."  *Id.*  Dr. Davis replied, "[c]orrect, that's my understanding.  *Id.* at 23.  Counsel then inquired, "the doctor [at the jail] would be the one who would be determining which medications to give him * * * [a]nd dosage and all that?  *Id.*  Dr. Davis responded "yes."  *Id.*  Counsel then asked, "[w]ould they necessarily have to follow the list that you put in your report, or could they * * * say, "[w]ell, this is what Mr. Ramey needs."  *Id.*  Dr. Davis answered that if appellant were not taking the medication voluntarily, "my understanding is he would need to stick to what's listed in the report."  *Id.*  Dr. Davis admitted that he did not know the medical specialty of the medical director of the Franklin County Jail.  *Id.* at 23-24.

{¶ 19}  On redirect examination, Dr. Davis reiterated his opinion that the side effects of all the medications discussed during the hearing were "manageable" and that "the sudden onset of new side effects during a trial is highly unlikely."  *Id.* at 24.  He further testified that many criminal-defendant patients medicated with psychotropic drugs to restore them to competency prefer to stay at Twin Valley during the course of trial.  When asked if this was so because Twin Valley monitors patients more closely, Dr. Davis stated, "[w]ell, I can't say * * * the frequency of our monitoring versus the jail."  *Id.* at 25.  He then stated, "I think a big concern a lot of times is that a person would stop taking their medicines if they went back to jail.  That's a concern that we have fairly often."  *Id.*

**{¶ 20}** On recross-examination, appellant's counsel asked whether Cogentin "will completely block" the side effects of Haldol or other psychotropic medications. *Id.* Dr. Davis responded, "I think it lowers the risk, but it's not an ironclad guarantee." *Id.* at 26.

**{¶ 21}** As noted above, in addition to Dr. Davis's testimony, the parties submitted and stipulated to Joint Ex. 1. That report substantially echoes Dr. Davis's testimony regarding the potential side effects of psychotropic medications. Under the subsection entitled "[t]he nature, degree, duration, and probability of side effects and/or significant risks," it states, "[t]he patient might experience akathisia (restlessness). Common, but treatable, extra pyramidal side effects include dystonia, dyskinesia, and akathisia. The patient will be closely monitored in order to minimize the likelihood of tardive dyskinesia. We will watch for other possible side effects such as sedation, gait disturbance, GI complaints, tremors, agranulocytosis, drooling, tachycardia, elevated blood sugars and seizures." (Joint. Ex. 1.)

**{¶ 22}** Appellant contends that Dr. Davis's testimony does not support the trial court's finding that the potential side effects associated with the administration of Haldol will not interfere significantly with appellant's ability to receive a fair trial. In support, appellant cites Justice Kennedy's concurring opinion in *Riggins v. Nevada,* 504 U.S. 127 (1992), wherein he outlined the unwanted side effects of psychotropic medications as well as the potentially negative impact such side effects may have on a defendant's Sixth Amendment right to receive a fair trial. Indeed, Justice Kennedy noted that the side effects of psychotropic medications "can prejudice the accused in two principal ways: (1) by altering his demeanor in a manner that will prejudice his reactions and presentation in the courtroom, and (2) by rendering him unable or unwilling to assist counsel." *Id.* at 142.

**{¶ 23}** We take no issue with Justice Kennedy's pronouncements in *Riggins.* However, we find that Dr. Davis's testimony addresses and satisfies the concerns raised by Justice Kennedy. As noted above, Dr. Davis expressly testified that he "would expect the medication side effects not to interfere with [appellant's] ability to work with his attorney and have a fair trial." (Sept. 17, 2019 Tr. at 10.) In addition, Dr. Davis addressed the specific concerns raised by appellant's counsel pertaining to each of the potential side effects of Haldol, opining that those side effects are "rare" and "uncommon" and are treatable with Cogentin.

{¶ 24}   Appellant's chief argument concerns Dr. Davis's alleged "fail[ure] to describe how Appellant's symptoms would be managed," i.e., "by whom they would be managed if he was held at the county jail; or who at [Twin Valley] (or the county jail) would determine if Appellant would be taken into the courtroom each day."   (Appellant's brief at 6.)  To be sure, Dr. Davis admitted uncertainty about the hypothetical scenarios posed by appellant's counsel regarding symptom management during trial.   However, Dr. Davis repeatedly emphasized that the side effects of Haldol were manageable with dosage adjustments, medication changes, or both, that the sudden development of debilitating side effects during the trial would be "highly unlikely," and that he had never encountered such circumstances.

{¶ 25}  As noted by appellee, State of Ohio, appellant's argument is based on hypothetical scenarios the trial court was not required to accept.  At oral argument, counsel for appellant averred that appellant is currently housed at Twin Valley.  At this juncture, neither this court nor the trial court are able to predict whether appellant will remain at Twin Valley once he is found competent to stand trial, or whether he will be transported to the Franklin County jail for the trial proceedings.  Moreover, neither this court nor the trial court are able to predict what side effects, if any, appellant may experience.  Indeed, Dr. Davis, appellant's own treating psychiatrist, testified that he could not predict "precisely what side effects [appellant] would have" were he prescribed the Haldol/Cogentin mix.  (Tr. at 13.)  Accordingly, it would be quite difficult, if not impossible, for Dr. Davis to opine with any specificity as to hypothetical arguments about where appellant will be housed during trial or how the development of potentially debilitating side effects during trial would be managed, particularly given his testimony that such scenario was unlikely to occur. Appellant's hypothetical arguments are mere speculation and do not negate Dr. Davis's testimony that the side effects of Haldol can be managed with dosage adjustments, medication changes, and use of Cogentin and will not interfere with his right to a fair trial. We further note that should such side effects develop during trial, appellant's trial counsel may request, or the trial court may sua sponte order, additional proceedings regarding appellant's competency.

{¶ 26}  The present case is similar to *Brewer,* 12th Dist. No. CA2008-04-040, 2008-Ohio-6193, wherein the appellate court held that the trial court's finding that "the

administration of medications is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist his counsel in conducting a trial defense" was supported by the testimony of the defendant's attending forensic psychiatrist who had been treating the defendant while he was committed to a psychiatric hospital in order to restore competency. There, the psychiatrist testified that the "doses of each drug [prescribed] were not likely to result in those severe side effects, [and that] if any medication presented side effects which negatively affected the defendant's ability to communicate, think, or generally assist with his defense, the medication would be immediately adjusted or discontinued to abate these negative effects." *Id.* at ¶ 25. The testimony provided by Dr. Davis is substantially similar to that of the psychiatrist in *Brewer.* After reviewing Dr. Davis's testimony, as well as Joint Ex. 1, we find no error in the trial court's conclusion that "[a]dministration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense in a way that would render the trial unfair." Accordingly, appellant's assignment of error is overruled.

{¶ 27} Having overruled appellant's sole assignment of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

————————————