[Cite as *State v. Sowards*, 2021-Ohio-4462.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 21AP-304 (C.P.C. No. 18CR-6088) |
| v. | : | No. 21AP-305 (C.P.C. No. 19CR-5986) |
| Sean Sowards, | : | |
| Defendant-Appellant. | : | (ACCELERATED CALENDAR) |

D E C I S I O N

Rendered on December 16, 2021

**On brief:** [*G. Gary Tyack*]*,* Prosecuting Attorney, and *Taylor M. Mick*, for appellee. **Argued:** *Taylor M. Mick*

**On brief:** *Todd W. Barstow Attorney at Law*, and *Todd W. Barstow* for appellant. **Argued:** *Todd W. Barstow*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} In these consolidated appeals, defendant-appellant, Sean C. Sowards, appeals a judgment of the Franklin County Court of Common Pleas ordering that he be involuntarily medicated with psychotropic medications to restore him to competency to stand trial. For the reasons outlined below, we affirm.

I. Facts and Procedural History

{¶ 2} On December 13, 2018, appellant was indicted in Franklin C.P. No. 18-CR-6088 on one count of felonious assault in violation of R.C. 2903.11, a second-degree felony, and one count of inducing panic in violation of R.C. 2917.31, a first-degree misdemeanor. On November 18, 2019, appellant was indicted in Franklin C.P. No. 19-CR-5986 on two counts of assault in violation of R.C. 2903.13, both fourth degree felonies.

{¶ 3}   As the case progressed, an issue arose concerning appellant's competency, and, on May 16, 2019, the trial court found appellant incompetent to stand trial.  The court ordered appellant to undergo treatment at Twin Valley Behavioral Healthcare ("TVBH"), for a period of one year.  On October 29, 2019, Dr. Gary Davis of TVBH issued a report, and the court held a hearing on December 2, 2019.  Dr. Davis initially found that appellant had the capacity to understand the nature of the proceedings against him and to assist his attorney in his defense, but at the hearing it was revealed that Dr. Davis was now equivocating on his opinion.  The parties did not stipulate to the report, and the court ordered that a follow-up report be completed.

{¶ 4}   On January 16, 2020, the court conducted a hearing where it was disclosed that appellant had refused to be evaluated by medical staff.  The court ordered a follow-up evaluation regarding competency be conducted.  On March 4, 2020, the court held a hearing and it was reported that appellant still refused to be evaluated.  In addition, Dr. Davis opined that appellant is incompetent but capable of being restored and has formally amended his report to reflect the new findings.  The court then ordered a new competency evaluation be conducted and continued the matter.  On June 1, 2020, the court held a hearing to consider the May 21, 2020 report by Dr. Keith Hodge, who found appellant to be incompetent but capable of being restored within a year.[1]   The court issued an order dated June 9, 2020 authorizing TVBH to administer medication by force if appellant refuses.  TVBH is also authorized to take forced blood draws to monitor any side effects of the medications.

{¶ 5}   On February 8, 2021, the court held a hearing to consider the January 26, 2021 report by TVBH that found appellant to be incompetent but capable of being restored within a year.  The parties stipulated to the report, which found that appellant continued to refuse medications.  The court issued an entry dated February 19, 2021 authorizing the administration of medication and blood draws by force.  On February 24, 2021, appellant filed a notice of appeal to this court, which was docketed as Case No. 21AP-76 for Franklin C.P. No. 18-CR-6088, and Case No. 21AP-77 for Franklin C.P. No. 19-CR-5986.  The cases

---

[1] Appellant had received 74 days of restoration, and that time will be subtracted from the one-year period.

were consolidated for appeal.  After the cases had been briefed, before argument, the parties submitted a joint motion to remand the case for an evidentiary hearing regarding whether the medications will render appellant competent to stand trial and whether the side effects of the medications will interfere with appellant's ability to assist his counsel at trial. On June 7, 2021, this court issued a judgment entry which remanded the matter to the trial court "for an evidentiary hearing on whether medications administered to appellant will be substantially likely to render him competent to stand trial and, at the same time, whether or not such medications will be substantially likely to have side effects that will interfere significantly with appellant's ability to assist counsel in conducting a trial defense. *U.S. v. Sell*, 539 U.S. 166 (2003)." *State v. Sowards*, 10th Dist. No. 21AP-76 (May 18, 2021 Jgmt. Entry.)

{¶ 6}    On June 3, 2021, the trial court held a hearing to address the medications and any side effects in accordance with the remand from this court.  Girdhar Singh, MD, appellant's treating physician, testified and offered evidence.  Thereafter, on June 16, 2021, the trial court issued a judgment ordering appellant to take all medications prescribed to him and to submit to all lab work or monitoring, and authorized TVBH to use force to administer medications and for lab work.  Appellant timely appealed the trial court's judgment.[2]

## II.  Assignment of Error

{¶ 7}    Appellant sets forth a single assignment of error for our review:

> I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO MAKE EVIDENCE-BASED FINDINGS IN ORDERING APPELLANT TO UNDERGO A REGIMEN OF FORCED MEDICATION IN AN EFFORT TO RESTORE HIM TO COMPETENCE TO STAND TRIAL.

## III.  Legal Analysis

{¶ 8}    Appellant asserts that the trial court committed error when it issued an order authorizing the involuntary administration of medication without making evidence based

---

[2] Franklin C.P. No. 18-CR-6088 is docketed as Case No. 21AP-304 and Franklin C.P. No. 19-CR-5986 is docketed as Case No. 21AP-305.  By journal entry filed June 21, 2021, this court sua sponte consolidated the appeals for purposes of record filing, briefing, oral argument, and determination.

findings in order to restore his competency and stand trial on the indicted charges of felonious assault and inducing panic.  We disagree.

{¶ 9}   At the outset we note that it is a fundamental principle that "a person [who] lacks the capacity to understand the nature and object of the proceeding against him, to consult with counsel, and to assist in preparing his defense may not be subject to a trial." *State v. Smith,* 89 Ohio St.3d 323 (2000), quoting *Drope v. Missouri,* 420 U.S. 162 (1975). To determine competency, the trial court must test whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402 (1960).

{¶ 10}  The statutory basis controlling the involuntary administration of medication to a criminal defendant is set forth in R.C. 2945.38(B)(1)(c):

> If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer of the institution, the director of the program or facility, or the person to which the defendant is committed for treatment or continuing evaluation and treatment under division (B)(1)(b) of this section determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer of the institution, the director of the program or facility, or the person to which the defendant is committed for treatment or continuing evaluation and treatment may petition the court for authorization for the involuntary administration of medication. The court shall hold a hearing on the petition within five days of the filing of the petition if the petition was filed in a municipal court or a county court regarding an incompetent defendant charged with a misdemeanor or within ten days of the filing of the petition if the petition was filed in a court of common pleas regarding an incompetent defendant charged with a felony offense. Following the hearing, the court may authorize the involuntary administration of medication or may dismiss the petition.

 R.C. 2945.38(B) does not contain specific standards for a trial court to apply in making a determination under the statute whether to authorize the involuntary administration of

medication to restore a defendant's competence. *State v. Brewer*, 12th Dist. No. CA2008-04-040, 2008-Ohio-6193, ¶ 9. However, in *Sell*, the United States Supreme Court found that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and taking account of less intrusive alternatives, is necessary significantly to further important government trial-related interests." *Sell v. United States*, 539 U.S. 166, 179 (2003). The trial court developed a four factor test to determine if medications may be involuntarily administered to render a defendant competent to stand trial.

{¶ 11} The first factor requires the court to "find that important governmental interests are at stake" such as prosecuting a defendant for a serious crime. *Id* at 180. The second factor requires the court to "conclude that involuntary medication will significantly further those concomitant state interests." *Id.* at 181. The second factor contains two subfactors, and the court must also find that the involuntary administration of drugs is both "substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Id.* at 181. The third factor requires the court to "conclude that involuntary medication is necessary to further" the government's interests, and must also find, as a subfactor that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Id.* The fourth and final factor requires the court to "conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." *Id. Sell* requires the trial court to make a specific finding that each factor and sub-factor is present because "without specific findings, a thorough and appropriate appellate review of the trial court's decision would be impossible." *State v. McClelland,* 10th Dist. No. 06AP-1236, 2007-Ohio-841, ¶ 9.

{¶ 12} The trial court conducted a hearing and made the specific findings mandated in *Sell*. However, appellant challenges the finding made regarding the second factor that the involuntary medication "is substantially unlikely to have side effects that would undermine the fairness of a trial or that would interfere significantly with the defendant's

ability to assist counsel in presenting a defense." (June 16, 2021 Entry at 1.) This court must review the findings in the trial court and "determine whether it is against the manifest weight of the evidence." *State v. Ramey,* 10th Dist. No. 19AP-642, 2019-Ohio-5087, ¶ 11. "Judgments supported by some competent, credible evidence addressing all the essential elements of the case will not be reversed on appeal as against the manifest weight of the evidence." *Id.,* quoting *In re J.F.,* 10th Dist. No. 06AP-1225, 2007-Ohio-2360, ¶ 23; *see State v. Williams,* 23 Ohio St.3d 16 (1986); ("since there was some reliable, credible evidence supporting the trial court's conclusion that appellant understood the nature and objective of the proceedings against him, this court will not disturb the finding that appellant was competent to stand trial.")

{¶ 13} On May 28, 2021, TVBH filed an application to authorize involuntary medication and requested a hearing. At the June 3, 2021 hearing, Dr. Singh, a board certified psychiatrist at TVBH who approved the application to authorize forced medications and defendant's treating physician, testified on direct examination that TVBH had developed a treatment plan to manage appellant's restoration to competency. [3] The treatment plan was prepared by Dr. Singh and Dr. Andrew Savageau, and outlined: (1) the reason for and nature of the proposed treatment, (2) the probable degree and duration of expected improvement or remission with and without the proposed treatment, (3) the specific treatment regimen, (4) the nature, degree, duration, and probability of any side effects, and (5) any reasonable alternative treatment options. (Appellee's Brief at 3-4.)

{¶ 14} Dr. Singh testified that he would administer one medication from each category and monitor appellant, and "if a patient is not responding to those medications" or if the "doctor sees side effects to those medications, we go to the next one." (June 3, 2021 Tr. at 20.) Dr. Singh averred that the goal was to balance the best interest of the patient and the effects of the prescribed medication with the side effects of the medications, and if the side effects outweigh the benefits of treatment, another medication will be prescribed. Dr. Singh testified that the proposed course of treatment is substantially likely to render

---

[3] The trial court without objection found Dr. Singh to be an expert in the field of psychiatry. (June 3, 2021 Tr. at 15.)

appellant competent within one year, and that any side effects of the medications would not undermine the fairness of appellant's trial.

{¶ 15} Dr. Singh specifically addressed the potential side effects of any medication, and testified if appellant takes the prescribed medication, he would be able to communicate effectively with counsel, and will be able to react to any developments during his trial and express emotion. When questioned about any "adverse sedative effects" Dr. Singh responded that sedative effects are possible but "that's why we dose it at night so that way he can sleep it off" and be able to effectively participate in the trial. (Tr. at 24.)

{¶ 16} Dr. Singh further testified, regarding the nature, degree, duration, and probability of the side effects, that the most common side effects with the medications "are mostly musculoskeletal side effects which include tremor, stiffness of the muscles and these side effects can be easily conquered with the medication like Cogentin as needed." (Tr. at 25.) Dr. Singh further opined that his application of the balancing test regarding effectiveness of treatment compared to harmful side effects would result in appellant receiving a fair trial.

{¶ 17} On cross-examination, counsel for appellant stated that the only areas of the report in contention were "No. 3, which are where you describe the actual treatment plan or the medications that you anticipate having to use" and "No. 4, the nature, degree, duration, and probability of side effects and/or significant risks." (Tr. at 29-30.) Dr. Singh confirmed that the plan balances "possible side effects to Mr. Sowards" with the effectiveness of the drug. (Tr. at 31.)

{¶ 18} Counsel questioned Dr. Singh about potential side effects, including "pyramidal side effects," "dystonia," and "dyskinesia," and what impact they would have on appellant at trial. (Tr. at 32-37.) Dr. Singh acknowledged the side effects and stated that pyramidal side effects are the "stiffness that it causes in the muscles because of these medications" and that they are also referred to as "Parkinsonian type side effects because these are the symptoms commonly seen in Parkinson's disease." (Tr. at 33.) Dr. Singh opined that the medications may cause shaking, tremors, and impact motor skills, but with "medications that we administer to counteract the side effects we generally don't see them at all because as soon as we see them we give the patient medication like Cogentin, that will take away the stiffness and tremors and everything." (Tr. at 34.) Dr. Singh testified that

dystonia is a muscle spasm that can be controlled by medication that "works effectively 100 percent of the time." (Tr. at 36.) Dr. Singh further testified that "[d]yskinesia is involuntary movements of the muscles" including the "upper arms and of the whole body," and at the "first sign of the dyskinesia we discontinue the medication and it will, most likely, it could never happen." (Tr. at 37.) Dyskinesia does not manifest itself "in a day or two" but is a long-term side effect that is "generally observed after years of treatment with these medications." (Tr. at 39.)

{¶ 19} Counsel asked Dr. Singh how the medications are monitored for side effects, and he averred that the patients are monitored "on a daily basis when the patient is moving by the unit and we also do a movement scale that we perform once every three to six months," and "if there is any abnormality in that we focus more attention to the patient." (Tr. at 38.)

{¶ 20} Appellant contends that Dr. Singh's testimony does not support the finding by the trial court that the side effects of the medications will not substantially interfere with appellant's ability to receive a fair trial. Appellant cites Justice Kennedy's concurrence in *Riggins* to support his position that the trial court's findings were deficient, where Justice Kennedy recognized that side effects "can prejudice the accused in two principal ways: (1) by altering his demeanor in a manner that will prejudice his reactions and presentation in the courtroom, and (2) by rendering him unable or unwilling to assist counsel." *Riggins v. Nevada,* 504 U.S. 127, 142 (1992).

{¶ 21} Our review of the record finds that Dr. Singh's testimony "addresses and satisfies the concerns raised by Justice Kennedy." *Ramey, supra* at ¶ 23. Dr. Singh clearly opined that appellant will be able to assist counsel and maintain his demeanor and was able to address each question or concern raised by appellant's counsel.

{¶ 22} Appellant asserts that Dr. Singh "did not testify with enough specificity how Appellant's symptoms would be managed." "For example, if Appellant were transferred to the Franklin County Jail for trial, Dr. Singh did not articulate, and was not even asked, how Appellant's medications, and the resulting symptoms would be managed or who would manage them. If Appellant were maintained at TVBH, Dr. Singh was not asked to opine whether Appellant would be taken to court for trial if he was experiencing the symptoms described in the Joint Exhibit. Dr. Singh was not asked if anyone from TVBH would be

present at the courthouse should Appellant need medical treatment for any side effects." (Appellant's Brief at 5-6.)  It should be noted that appellant's counsel did not question Dr. Singh on these issues.

{¶ 23}  The concerns advanced by appellant are all based on conjectural situations that will only occur at a future date during appellant's trial.  "[A]ppellant's argument is based on hypothetical scenarios the trial court was not required to accept." *Ramey,* at ¶ 25. Appellant is currently housed at TVBH, and it is pure speculation to discuss whether appellant will remain at TVBH once he is rendered competent to stand trial or be transferred to the Franklin County jail.  Dr. Singh testified that as long as appellant is taking medication "there is always risk of side effects."  (Tr. at 43.)  However, no one is able to opine with any degree of psychiatric accuracy the exact symptoms appellant will be experiencing at trial.  "Moreover, neither this court nor the trial court are able to predict what side effects, if any, appellant may experience." *Ramey* at ¶ 25.  Dr. Singh has opined that severe side effects were unlikely to occur, and even if asked, it would be difficult for him to respond to hypothetical questions about potentially incapacitating side effects appellant may experience during trial.  TVBH submitted a comprehensive treatment plan with Dr. Singh's report, and it addresses the medical management of side effects now and in the future.  (State Ex. 1.)  Dr. Singh specifically testified that the "side effects can be easily conquered," and the hypothetical arguments of appellant do not nullify his medical opinion. (Tr. at 25.)  "Appellant's hypothetical arguments are mere speculation and do not negate [the psychiatrist's] testimony that the side effects of [the medication] can be managed with dosage adjustments, medication changes, and use of [the medication] will not interfere with his right to a fair trial." *Ramey* at ¶ 25 (alteration in original).  Obviously, if appellant experiences side effects at court during trial, appellant's counsel, or the court sua sponte may take appropriate action regarding appellant.

## IV.  Conclusion

{¶ 24}  We find that the trial court did not err in reaching the conclusion that the proposed medication is "substantially unlikely to have side effects that would undermine the fairness of a trial or that would interfere significantly with the defendant's ability to

assist counsel in presenting a defense."   (Entry at 1.)   Appellant's assignment of error is overruled.

{¶ 25}  Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

———————————