The STATE of Ohio, Appellee,

v.

UPSHAW, Appellant.

[Cite as *State v. Upshaw,* 166 Ohio App.3d 95, 2006-Ohio-1819.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2005–CA–64.

Decided April 7, 2006.

Stephen A. Schumaker, Clark County Prosecuting Attorney, for appellee.

John J. Scaccia and Shawn P. Hooks, for appellant.

BROGAN, Judge.

{¶ 1} Defendant-appellant, Raymond Upshaw, appeals from a trial court decision ordering that he could be forcibly medicated by Twin Valley Behavioral Health Care ("Twin Valley"). In support of the appeal, Upshaw presents the following assignments of error:

{¶ 2} "I. Because the trial court failed to make the requisite findings pursuant to *Sell v. United States* [539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003)], the trial court erred to the Defendant–Appellant's prejudice in granting the petition to forcefully medicate and must be reversed.

{¶ 3} "II. Because Twin Valley failed to file the petition to request that they be permitted to forcefully medicate the Defendant–Appellant, the trial court lacked jurisdiction to hold a hearing and render a decision on the request. Thus, the trial court's decision permitting forceful medication of the Defendant–Appellant must be reversed.

{¶ 4} "III. The trial court abused its discretion in failing to grant the Defendant–Appellant's motion to continue and/or motion to bifurcate the hearing

because the Defendant–Appellant was severely prejudiced by being precluded from having a material and relevant witness testify at the hearing on his behalf."

{¶ 5} After considering the record and applicable law, we find that the first assignment of error has merit. Accordingly, the judgment is reversed, and this cause is remanded to the trial court for further proceedings.

I

{¶ 6} On September 27, 2004, an indictment was filed in Clark County Common Pleas Court, charging Raymond Upshaw with two counts of felonious assault and one count of abduction, all with firearm specifications. Subsequently, on November 12, 2004, Upshaw's attorney, a public defender, filed a motion asking that Upshaw be examined for competency. The trial court filed an order on March 8, 2005, finding that Upshaw suffered from severe mental disease and was not competent to stand trial. Based on this finding, the court ordered Upshaw to be committed to Twin Valley for competency restoration.

{¶ 7} Upshaw obtained new counsel and appealed from the competency decision. However, we dismissed the appeal on April 13, 2005, for lack of a final, appealable order. At Upshaw's request, we certified a conflict to the Ohio Supreme Court. The Supreme Court accepted the conflict on September 7, 2005, but has not yet issued a decision. See *State v. Upshaw*, 106 Ohio St.3d 1501, 2005-Ohio-4605, 833 N.E.2d 1245.

{¶ 8} In the meantime, Upshaw's counsel, Adelina Hamilton, filed a motion in the trial court on May 19, 2005, seeking to withdraw as defense counsel. The reason given was that Upshaw had said that he wished to terminate Hamilton's services. An entry granting the motion was filed the same day.

{¶ 9} Around a week later, on or about May 25, 2005, Twin Valley sent the trial judge a letter requesting a court order for forced medication. Although this document had not yet been filed with the clerk, the trial judge set the matter for hearing on June 7, 2005, at 11:00 a.m. On June 2, 2005, Hamilton (who had apparently once again been retained as counsel), filed a motion to reschedule the hearing either for later in the day on June 7 or for another day and time. As grounds, Hamilton explained that she had been scheduled for over five months to take the federal bar examination at 9:30 a.m. on June 7, 2005. Hamilton claimed that she would not be able to take the exam and arrive in Springfield in time for the hearing. She also said that the exam would not be given again until the following December and that if she failed to take the test on June 7, she would have to appear pro hac vice every time she wanted to litigate cases in federal court. The trial court overruled the motion, without explanation, on the day that it was filed.

{¶ 10} On the day of the hearing, the trial court said that it had been notified that another attorney in Hamilton's office was coming to represent Upshaw. Although the court waited until 11:20 a.m., no one appeared on Upshaw's behalf. The court then chose to start the hearing without counsel for Upshaw.

{¶ 11} Only one witness (Dr. Bloom, from Twin Valley), testified at the hearing. Shortly after Dr. Bloom began to testify, Hamilton entered the courtroom. At the time, Dr. Bloom had simply answered a few preliminary questions about her background. Bloom then continued to testify. Dr. Bloom said that she had met with Upshaw and that he was psychotic, with delusions. Dr. Bloom also indicated that Upshaw's psychotic disorder could be helped with multimodal treatment and that her own area of expertise was medication.

{¶ 12} At this point, attorney John Scaccia also entered the hearing. Like Hamilton, Scaccia was counsel for Upshaw and was present for the rest of the hearing. After Scaccia entered, Dr. Bloom continued to testify. Dr. Bloom indicated that she had not been able to give Upshaw any medications because he had refused to take them. She also said that if medications were administered, a chance existed that Upshaw could be restored to competency. However, she did not discuss any specific medications, did not outline the possible side effects, and did not outline a particular course of treatment.

{¶ 13} Before Scaccia began cross-examination, he gave the court a motion for continuance that his office had prepared. In the motion, Upshaw's attorneys claimed that they had not been notified of the hearing until June 2, 2005, and had not had time to subpoena Upshaw's treating psychiatrist, Dr. Crystal Osborne, due to the short time that remained between finding Osborne and completing the investigation of potential testimony. Apparently, Osborne had told counsel the day before the hearing that she would not be able to attend because she held clinic between the hours of 9:00 a.m. and 2:00 p.m. As a result, the motion requested a brief continuance so that Dr. Osborne's testimony could be obtained.

{¶ 14} In court, Scaccia reiterated that Upshaw desired a continuance. However, Scaccia also suggested that the court could bifurcate the case, since the hearing had already started. The court did not respond to the request, but told Scaccia that he could cross-examine Dr. Bloom if he wished.

{¶ 15} Scaccia then proceeded to conduct a fairly lengthy cross-examination of Dr. Bloom. Near the end of the cross-examination, Scaccia began asking questions directed toward the competency issue, rather than toward the issue of forced medication. At that point, the trial court intervened and stressed that the competency issue would not be revisited. When Scaccia argued that his client was competent at the time of the present hearing, the court directed Scaccia to proceed with questions of the pending witness. Scaccia continued to press the matter with the court, apparently intending to make a record. However, the

court responded by finding that Scaccia had no further questions for Dr. Bloom. The court then excused Dr. Bloom.

{¶ 16} The state rested without calling further witnesses, and the court asked whether the defense had witnesses. Scaccia indicated that he had intended to call Upshaw's treating psychiatrist, but that she was not able to appear. Consequently, the court ended the presentation of testimony and also overruled the motion for continuance. The court followed by issuing a ruling on the record.

{¶ 17} In its ruling, the court noted Dr. Bloom's statement that Upshaw suffered from psychosis. The court found that Dr. Bloom needed considerable latitude to treat Upshaw as she deemed appropriate. In addition, the court concluded that there was evidence indicating that Upshaw was a violent person. In particular, the court relied on the grand-jury indictment, which was based on probable cause to believe that Upshaw had committed felonious assault and abduction with a firearm. Finally, the court noted that Dr. Bloom, not the court, had the expertise to decide which medications were appropriate. Accordingly, the court granted the motion for forced medication and authority to draw blood.

{¶ 18} Defense counsel immediately asked for a stay, which was overruled. The next day (June 8, 2005), the trial court filed an order granting Twin Valley authority to prescribe any combination of 33 medications listed in "Exhibit A," which was attached to the order. The court had granted Twin Valley authority to draw blood in order to monitor medication levels. Upshaw appealed to our court on June 8, 2005, and also filed a motion for a stay. On June 9, 2005, we granted a stay of the forced-medication order. Subsequently, on June 15, 2005, the trial court filed a nunc pro tunc entry, ordering that the letter and application from Twin Valley be filed and be made a part of the trial court record as of May 25, 2005. This was apparently when the trial court received the letter from Twin Valley.

{¶ 19} After we granted the stay, the stay issue came before us again when we received notice from Twin Valley that Upshaw had been on a hunger strike for a week and had lost 13 pounds. After conferring with attorneys from both sides and with Twin Valley personnel, we modified the stay on November 10, 2005. The modification allowed Twin Valley to treat Upshaw's physical-health needs as well as any psychiatric conditions that affected his physical health, which had been put at risk by Upshaw's refusal of nutrition and hydration.

{¶ 20} In the first assignment of error, Upshaw contends that the decision on forced medication should be reversed because the trial court failed to make the findings required by *Sell v. United States* (2003), 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197. The state has not filed a brief and has, therefore, not responded to Upshaw's claims.

{¶ 21} Before discussing *Sell*, we will examine Ohio law pertaining to forced medication. The Ohio statute authorizing administration of forced medication is R.C. 2945.38(B)(1)(c), which provides:

{¶ 22} "If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital or facility, the managing officer of the institution, the director of the program, or the person to which the defendant is committed for treatment or continuing evaluation and treatment under division (B)(1)(b) of this section determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer, managing officer, director, or person to which the defendant is committed for treatment or continuing evaluation and treatment may petition the court for authorization for the involuntary administration of medication. The court shall hold a hearing on the petition within five days of the filing of the petition if the petition was filed in a municipal court or a county court regarding an incompetent defendant charged with a misdemeanor or within ten days of the filing of the petition if the petition was filed in a court of common pleas regarding an incompetent defendant charged with a felony offense. Following the hearing, the court may authorize the involuntary administration of medication or may dismiss the petition."

{¶ 23} R.C. 2945.38 does not contain specific standards for deciding whether forced medication should be ordered. According to established authority, individuals have "a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell*, 539 U.S. at 178, 123 S.Ct. 2174, 156 L.Ed.2d 197, quoting *Washington v. Harper* (1990), 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178. In *Sell*, the United States Supreme Court held that because of this liberty interest, the government may involuntarily medicate mentally ill defendants for the purpose of rendering them competent to stand trial "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. at 179, 123 S.Ct. 2174, 156 L.Ed.2d 197.

{¶ 24} In *Sell*, the Supreme Court also set out further findings that it felt were either stated by or implied in the above standard. The first of these is that "a court must find that *important* governmental interests are at stake." (Emphasis sic.) Id. at 180, 123 S.Ct. 2174, 156 L.Ed.2d 197. In this context, the Supreme Court acknowledged that the government has an important interest in bringing accused individuals to trial. However, the court also stressed that trial courts "must consider the facts of the individual case in evaluating the Govern-

ment's interest in prosecution," and that special circumstances may lessen the importance of the government's interest. Id.

{¶ 25} Regarding the remaining findings, the Supreme Court stated:

{¶ 26} "Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. * * *

{¶ 27} "Third, the court must conclude that involuntary medication is *necessary* to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. * * * And the court must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive methods.

{¶ 28} "Fourth, as we have said, the court must conclude that administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition. The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." (Emphasis sic.) 539 U.S. at 181, 123 S.Ct. 2174, 156 L.Ed.2d 197.

{¶ 29} After applying these factors to the case it was considering, the Supreme Court vacated the order for forced medication. Among other things, the Supreme Court found that lower courts had focused primarily on the defendant's dangerousness, not on the need to bring him to trial. In this regard, the court stressed:

{¶ 30} "The failure to focus upon trial competence could well have mattered. Whether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions are matters important in determining the permissibility of medication to restore competence, * * * but not necessarily relevant when dangerousness is primarily at issue. We cannot tell whether the side effects of antipsychotic medication were likely to undermine the fairness of a trial * * *." *Sell,* 539 U.S. at 185–186, 123 S.Ct. 2174, 156 L.Ed.2d 197.

{¶ 31} In the present case, none of the above requirements were followed, nor were the appropriate findings made. As just one example, the court failed to make any findings about the side effects of the proposed medicines. The record

also fails to contain evidence about what medications Twin Valley planned to use and the side effects, if any, of those medications. Exhibit A simply lists 33 medications that Twin Valley proposed using, with no indication of what specific medicines or combinations of medicines were going to be administered. And as we said, Dr. Bloom gave no indication of what medicines would be used or their potential side effects. We assume that Upshaw was not going to be given 33 medications. However, even if all these medications were to be used, there is no evidence in the record of their effects.

{¶ 32} Because the trial court failed to comply with the requirements for ordering forced medication, the first assignment of error has merit and is sustained. This judgment is reversed, and the cause is remanded to the trial court for further proceedings.

## II

{¶ 33} In the second assignment of error, Upshaw claims that the trial court lacked jurisdiction to hold a hearing and to issue a decision because Twin Valley failed to file a petition to request forced medication. As noted above, Twin Valley wrote to the trial court, asking for a forced-medication order. The letter was apparently not filed when the trial court received it. However, the trial court "filed" it as of the date it was received, via a nunc pro tunc entry. Upshaw contends that the nunc pro tunc entry was ineffective because it deprived him of an argument on appeal. In addition, Upshaw argues that backdating the filing is beyond the court's power to correct clerical mistakes in entries.

{¶ 34} This assignment has no merit. The trial court could properly treat the Twin Valley letter of May 25, 2005, as a "petition" under the provisions of R.C. 2945.38. Although the trial court did not file it on May 25, 2005, it did file it nunc pro tunc on June 14, 2005, as filed "now" for May 25, 2005. This was a proper nunc pro tunc entry because the court did receive the letter or petition on May 25, 2005. Upshaw was given adequate notice of the June 7, 2005 hearing on the forced-medication request. The second assignment of error is overruled.

## III

{¶ 35} In his third assignment, Upshaw contends that the trial court abused its discretion in denying his request for a continuance to present the testimony of Dr. Osborne, his treating psychiatrist. We agree. Upshaw sought only a brief continuance so that important testimony could be presented. The third assignment of error is sustained.

{¶ 36} The judgment of the trial court is reversed, and the cause is remanded for further proceedings so that Dr. Osborne may offer testimony to assist the court in determining whether the forced-medication request should be granted.

Judgment reversed
and cause remanded.

GRADY, P.J., and FAIN, J., concur.