[Cite as *State v. Jefferson*, 2021-Ohio-2092.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200135 |
| | | TRIAL NO. B-1907157 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| LOUIS JEFFERSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 23, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *H. Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} In the wake of an incompetency determination, the trial court ordered that defendant-appellant Louis Jefferson be involuntarily medicated in order to restore his competency. Mr. Jefferson now appeals that involuntary-medication edict, challenging the court's findings as against the manifest weight of the evidence. After reviewing the record, however, we conclude that the court's findings were supported by at least some competent evidence and affirm its judgment.

I.

{¶2} Mr. Jefferson was indicted for murder, felonious assault, and tampering with evidence. But this occurred against a documented history of mental health issues for Mr. Jefferson, including schizophrenia, and the trial court deemed him incompetent to stand trial. The court further determined that, with treatment, a substantial likelihood existed that Mr. Jefferson could be restored to competency within a year. He was accordingly committed to Summit Behavioral Health for that purpose, but things didn't go as planned because he refused to take any medication, opting instead to "cleanse" his body through a regiment of diet and exercise.

{¶3} Mr. Jefferson's holistic approach failed to make progress, prompting Summit to petition the trial court for authority to involuntarily medicate him, seeking authorization for 26 medications in total. The trial court soon convened a hearing, and Mr. Jefferson's psychiatrist, Dr. Vanessa Doyle, explained that she hoped to use only one medication from that list: Invega, a drug that Mr. Jefferson had taken before with positive results. She requested authorization for the other medications only as contingencies in the event that Invega proved ineffective or starting producing negative side effects. For example, Dr. Doyle sought

authorization for 11 or so additional antipsychotic drugs that could substitute for Invega. The remaining, non-antipsychotic medications would be available to treat issues such as mood-stabilization, agitation, insomnia, and depression—the goal being to ensure that Mr. Jefferson was feeling well and not laboring under any problematic side-effects. As the trial court put it, these medications represented Dr. Doyle's "toolbox" for restoring Mr. Jefferson to competency.

{¶4} Mr. Jefferson now appeals the trial court's decision, featuring a single assignment of error. He does not dispute Dr. Doyle's credentials or any of her conclusions. Nor does he point to contrary evidence in the record that might undermine her testimony. Instead, Mr. Jefferson argues narrowly that some of the trial court's conclusions find no support in the record.

II.

{¶5} R.C. 2945.38(B)(1)(c) provides the procedural guidelines for involuntary administration of medication to incompetent defendants. *State v. Ramey*, 10th Dist. Franklin Nos. 19AP-642 and 19AP-643, 2019-Ohio-5087, ¶ 8. However, this statute does not shed light on *whether* a court should order involuntary medication. *Id.* at ¶ 9 ("R.C. 2945.38(B)(1)(c) does not set forth specific standards for a trial court to apply in determining whether to order the involuntary administration of medication to restore a criminal defendant's competence to stand trial."); *see State v. Brewer*, 12th Dist. Clermont No. CA2008-04-040, 2008-Ohio-6193, ¶ 9. Instead, Ohio courts follow four factors delineated in *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). *See City of Cleveland v. Tarver*, 8th Dist. Cuyahoga No. 105522, 2017-Ohio-1165, ¶ 8 ("[T]he state of Ohio has followed the standard set forth in *Sell.*"); *see also State v. Upshaw*, 166 Ohio

3

App.3d 95, 2006-Ohio-1819, 849 N.E.2d 91, ¶ 20–30 (2d Dist.); *Ramey* at ¶ 9. The *Sell* factors require the trial court to make four findings to ensure constitutional adequacy of the order: (1) "that *important* governmental interests are at stake"; (2) "that forced medication will *significantly further* those concomitant state interests"; (3) "that involuntary medication is *necessary* to further those interests"; and (4) "that administration of the drugs is *medically appropriate.*" (Emphasis sic.) *Sell* at paragraph two of the syllabus.

{¶6} While Mr. Jefferson concedes that the trial court made the specific findings dictated by *Sell*, he attacks some of those findings as unsupported by the evidence. Thus, we will reverse only if the trial court's findings are against the manifest weight of the evidence, i.e., not "supported by some competent, credible evidence." *See Ramey* at ¶ 11 (reviewing an evidentiary challenge to a *Sell* order using a manifest-weight standard). Mr. Jefferson challenges the trial court's findings for only the second, third, and fourth *Sell* factors.

{¶7} The second *Sell* factor—whether the medications will significantly further the state's interest—actually poses a two-pronged inquiry: (1) whether the "administration of the drugs is substantially likely to render the defendant competent to stand trial"; and (2) whether the "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell*, 539 U.S. at 181, 123 S.Ct. 2174, 156 L.Ed.2d 197. Here, Mr. Jefferson contests only the second prong of this inquiry, pointing out that Dr. Doyle never specifically addressed whether the medications might interfere with his ability to communicate with counsel. Although Dr. Doyle did not explicitly answer this

4

precise question, she conveyed that Mr. Jefferson had previously taken Invega, that it worked well without yielding negative side effects, and that she believed Invega would likely render Mr. Jefferson competent for trial. Based on her medical judgment and his prior experience with Invega, Dr. Doyle was confident that Invega would help restore Mr. Jefferson's competency. Furthermore, Dr. Doyle explained that, while she hoped not to use the remaining medications, their benefits would outweigh any possible side effects. We also note that Mr. Jefferson points to no contrary evidence in the record, and neither did his cross-examination of Dr. Doyle bring anything to light that would cast doubt on her testimony. Thus, we conclude that the trial court had at least some evidence supporting its second *Sell* finding.

{¶8} The third *Sell* factor asks whether the medications are necessary to further the state's interests. And in so concluding, "[t]he court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell* at 181. Furthermore, before considering more intrusive methods of administration (e.g., involuntary medication), the court must consider less intrusive methods (e.g., a court order backed by contempt power). *Id.* Here, Mr. Jefferson does not suggest that the trial court failed to *consider* less intrusive means, instead contending that a less intrusive path existed. He stresses that counsel informed the trial court that Mr. Jefferson would follow its orders. And because Mr. Jefferson professed to recognize the authority of the court, he argues that a less intrusive means was in fact available. But the court observed that if Mr. Jefferson would orally agree to take his medication, "then there is no problem," but that "up until this particular date, he has not." Indeed, if it were that simple, we presumably would not be here. Mr. Jefferson's attorney also asked the court to issue an order backed by

contempt power (a less intrusive means), but the court ultimately declined. Thus, we conclude that the trial court satisfied the third *Sell* factor because it considered a less intrusive means and had at least some basis for concluding that involuntary medication was the only effective recourse in light of the totality of the record.

{¶9} The fourth and final *Sell* factor scrutinizes the medical appropriateness of the administration of the drugs. More specifically, this inquiry focuses on whether the medications are "in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181, 123 S.Ct. 2174, 156 L.Ed.2d 197. Here, Mr. Jefferson concedes that the evidence shows that *Invega* was in his best medical interest, but he protests that no evidence demonstrated that the same holds true for the *other medications*.

{¶10} In this regard, Mr. Jefferson relies upon *Upshaw*, 166 Ohio App.3d 95, 2006-Ohio-1819, 849 N.E.2d 91, at ¶ 31, where the Second District reversed an involuntary-medication order because the trial court failed to make the necessary *Sell* findings and because the evidence failed to support the trial court's order. Although the trial court in *Upshaw* authorized 33 medications in total, the record contained no evidence about which medications would be used or their side effects. *Id.* Applying *Upshaw*, Mr. Jefferson invites us to reverse because Dr. Doyle did not walk through each of the non-Invega medications or explain their potential side effects. Ultimately, we find *Upshaw* inapposite because Dr. Doyle testified about which medications she planned to use and their possible side effects. Dr. Doyle envisioned utilizing only Invega, to which Mr. Jefferson had previously responded well. And she further explained that she requested approval to use the other medications only in the event that Mr. Jefferson experienced unexpected side effects

6

or encountered other unforeseen problems with Invega. She also offered specific reasons for potentially using the non-antipsychotic medications, including addressing mood swings, insomnia, and agitation. And finally, Dr. Doyle testified that the benefits of all the medications on her list would outweigh any possible side effects, adding that none of them have any physiological or psychological addiction potential. One of Mr. Jefferson's chief concerns, based on her interactions with him, was consuming a drug that would lead to addiction, and Dr. Doyle capably explained why these drugs would not yield that effect. As a result, we conclude that the trial court's fourth *Sell* finding was also supported by the evidence.

\* \* \*

**{¶11}** In light of the foregoing analysis, we overrule Mr. Jefferson's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

Myers, P. J., and Hendon, J., concur.

SYLVIA SIEVE HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its entry on the date of the release of this opinion