[Cite as *State v. Lanier*, 2021-Ohio-4194.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

      Plaintiff-Appellee,                  :               No. 20AP-480
                                                   (C.P.C. No. 19CR-5944)
v.                                                 :
                                                   (REGULAR CALENDAR)
Crystal J. Lanier,                                 :

      Defendant-Appellant.                 :

---

D E C I S I O N

Rendered on November 30, 2021

---

**On brief**: [*G. Gary Tyack*], and *Sheryl L. Prichard*, for
appellee.

**On brief**: *Crystal J. Lanier*, pro se.

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Defendant-appellant, Crystal J. Lanier, appeals from a judgment of the
Franklin County Court of Common Pleas authorizing the medical staff at Twin Valley
Behavioral Healthcare ("Twin Valley") to involuntarily administer medication to her. For
the reasons which follow, we affirm.

{¶ 2} By indictment filed November 15, 2019, plaintiff-appellee, State of Ohio,
charged appellant with two counts of murder, in violation of R.C. 2903.02, and one count
of tampering with evidence, in violation of R.C 2921.12. Each count carried a firearm
specification. Appellant entered a plea of not guilty to the charges.

{¶ 3} As the matter proceeded, the issue of appellant's competency to stand trial
arose. The court ordered a competency evaluation of appellant in accordance with R.C.

2945.371. On August 13, 2020, the court held a hearing to address appellant's competency. Appellant was present and represented by counsel at the hearing. Following the hearing, the court found appellant incompetent to stand trial and ordered appellant to undergo treatment to restore competency at Twin Valley for a period of one year.

{¶ 4} On September 3, 2020, David Soehner, M.D., appellant's attending psychiatrist at Twin Valley, filed a petition requesting authorization to administer medication to appellant involuntarily. The court held a hearing on the petition on September 17, 2020. Appellant appeared via live video feed from Twin Valley and was represented by counsel at the hearing. The trial court orally granted the petition at the conclusion of the hearing. On September 18, 2020, the court issued an entry finding appellant could not be restored to competency if she continued to refuse to take medication. The court ordered appellant to take all medication prescribed to her and authorized the medical staff at Twin Valley to administer medication to appellant by force if necessary.

{¶ 5} Appellant appeals pro se from the September 18, 2020 entry, asserting the following errors for our review:

> I. Dr. David Soehner said to me that he wanted me to take medication because I spoke about two different dates telling him what happened and when it happened. The Resident (physician)(psychiatrist) witnessed that. A similar example of how I spoke about two dates is if I say to you that Dr. Soehner waited until the video hearing on 9/17/2020 to say that he wanted me to take this medicine for delusional disorder just like my previous lawyer Mary A. Younger waited until the hearing on 8/13/2020 to say in addition to they want me to go to Twin Valley for competency classes but she wants me to take anti psychotic medicine because I speak about a court conspiracy.
>
> II. I don't need medication to take competency classes and I'm not incompetent as my previous lawyer said before proving the hearing on 8/13/2020 that I was talking about pleas when I was actually talking about knowing about pleas and what they are.
>
> III. I am not delusional.

(Sic passim.)

{¶ 6} As appellant's assignments of error are related, we address them jointly. Appellant's assignments of error appear to assert that the trial court erred by finding her incompetent to stand trial and by authorizing the medical staff at Twin Valley to involuntarily administer medication to her.

{¶ 7} Fundamental principles of fairness and due process demand that a criminal defendant who is not legally competent may not be tried or convicted of a crime. *See Pate v. Robinson*, 383 U.S. 375 (1966); *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). The constitutional test for competency to stand trial is whether the defendant has sufficient present ability to consult with their lawyer with a reasonable degree of rational understanding, and whether they have a rational as well as factual understanding of the proceedings against them. *Berry* at 359, citing *Dusky v. United States*, 362 U.S. 402 (1960). Ohio has codified this standard in R.C. 2945.37(G). An appellate court will not disturb a trial court's competency determination where it is supported by reliable and credible evidence in the record. *State v. Williams*, 23 Ohio St.3d 16, 19 (1986); *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 33.

{¶ 8} At the August 13, 2020 competency hearing, the state and defense counsel stipulated to the contents of the report regarding appellant's competency. *See* R.C. 2945.37(E) (providing that "[a] written report of the evaluation of the defendant may be admitted into evidence at the hearing by stipulation"). The trial court concluded that appellant was incapable of understanding the nature and objectives of the proceedings against her or of assisting in her defense "based upon the relevant reports, information, and other evidence presented and the stipulation of counsel." (Aug. 13, 2020 Entry at 1.) Accordingly, reliable and credible evidence in the record, including the stipulated competency report, supported the court's conclusion that appellant was incompetent to stand trial. As such, the trial court did not err in finding appellant incompetent to stand trial.

{¶ 9} R.C. 2945.38(B)(1)(c) governs the involuntary administration of medication to a criminal defendant, providing as follows:

> If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer of the institution, the director of the program or facility, or the person to which the defendant is committed for treatment or

> continuing evaluation and treatment under division (B)(1)(b) of this section determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer of the institution, the director of the program or facility, or the person to which the defendant is committed for treatment or continuing evaluation and treatment may petition the court for authorization for the involuntary administration of medication. The court shall hold a hearing on the petition within five days of the filing of the petition if the petition was filed in a municipal court or a county court regarding an incompetent defendant charged with a misdemeanor or within ten days of the filing of the petition if the petition was filed in a court of common pleas regarding an incompetent defendant charged with a felony offence. Following the hearing, the court may authorize the involuntary administration of medication or may dismiss the petition.

{¶ 10} R.C. 2945.38 does not set forth specific standards for a trial court to apply in determining whether to order the involuntary administration of medication. However, in *Sell v. United States*, 539 U.S. 166 (2003), the United States Supreme Court held that the constitution permits the government to involuntarily administer medication to a defendant facing serious criminal charges in order to render the defendant competent to stand trial "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary to further important governmental trial-related interests." *Sell* at 179.

{¶ 11} Thus, pursuant to *Sell*, a trial court must make the following findings prior to authorizing involuntary administration of medication to a criminal defendant: (1) the existence of an important governmental interest, (2) that involuntary medication will significantly further the state's interest, (3) that involuntary medication is necessary to further the state's interest, and (4) that the administration of the medication is medically appropriate for the individual defendant. *Sell* at 180-81; *State v. Brewer*, 12th Dist. No. CA2008-04-040, 2008-Ohio-6193, ¶ 11. The trial court must make specific findings regarding the factors enunciated in *Sell*. *State v. McClelland*, 10th Dist. No. 06AP-1236,

2007-Ohio-841, ¶ 9; *State v. Upshaw*, 166 Ohio App.3d 95, 2006-Ohio-1819, ¶ 31-32 (2d Dist.).

{¶ 12} Although appellant does not present a specific argument regarding any of the *Sell* factors, we will briefly analyze each. An appellate court reviews the trial court's finding on the first *Sell* factor de novo and the court's findings on the remaining *Sell* factors for clear error. *Brewer* at ¶ 13, 21, citing *United States v. Green*, 532 F.3d 538, 546, 552 (6th Cir.2008); *United States v. Hernandez-Vasquez*, 513 F.3d 908, 915-16 (9th Cir.2008).

{¶ 13} The first *Sell* factor requires the trial court to find that important governmental interests are at stake. The government's interest in prosecuting "an individual accused of a serious crime is important." *Sell* at 180. In *Sell*, the court noted it had previously "suggested that, in principle, forced medication in order to render a defendant competent to stand trial for murder was constitutionally permissible." *Sell* at 179, citing *Riggins v. Nevada*, 504 U.S. 127 (1992). *See also Green* at 549 (stating that "[w]hether a crime is 'serious' should be determined by its maximum statutory penalty"). As appellant was charged with murder, one of the most serious crimes, the government's interest in bringing appellant to trial was important.

{¶ 14} The second *Sell* factor obligates the trial court to find that involuntary medication will significantly further the state's interest. To make this finding, the trial court must conclude that administration of the medication is "substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *Sell* at 181. The trial court expressly relied on Dr. Soehner's testimony from the September 17, 2020 hearing to grant the petition for involuntary administration of medication.

{¶ 15} Dr. Soehner stated that he had diagnosed appellant with delusional disorder, persecutory type. Dr. Soehner explained that his proposed course of treatment for appellant would begin with a "relatively low [dosage] of Risperdal," but that appellant was refusing to take any medication. (Tr. at 7.) Dr. Soehner stated that appellant could not be restored to competency without medication, as medication was the "only thing" that would "help with significantly reducing persecutory and disorganized thinking." (Tr. at 8-9.)

{¶ 16} Dr. Soehner stated that the potential side effects of the proposed medication could "include some sedation and [could] also increase appetite." (Tr. at 12.) He explained that the medical staff at Twin Valley would "monitor patients' weight and encourage a healthy diet and exercise to prevent weight gain or increase in cholesterol or lipids." (Tr. at 12.) Dr. Soehner assured the court that the medication would not impair appellant's ability to communicate with counsel. He stated that "monitoring her side effects of the medications will be done, and the goal is to reduce symptoms, not to overmedicate or cause side effects that the patient can't function." (Tr. at 14.) Dr. Soehner noted that "[a]t the dosage [he was] starting the patient on, [he] expect[ed] the side effects to be minimal." (Tr. at 12.) Dr. Soehner affirmed that the potential side effects from the proposed medication were "outweighed by the patient's best interest to take these medications." (Tr. at 9.)

{¶ 17} Dr. Soehner's testimony supported the conclusion that the proposed medication was likely to render appellant competent to stand trial and unlikely to have side effects that would impair her ability to assist counsel during trial. As such, the record supported the finding under the second *Sell* factor.

{¶ 18} The third *Sell* factor obligates the trial court to find that involuntary medication is necessary to further the government's interests. In so concluding, the trial court must determine that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell* at 181. Dr. Soehner testified that medication was necessary to restore appellant to competency and that there were "no lesser restrictive methods" than the proposed medication to render appellant competent to stand trial. (Tr. at 9.) Thus, Dr. Soehner's testimony supported the finding under the third *Sell* factor.

{¶ 19} The fourth *Sell* factor requires the trial court to find that administration of the medication is medically appropriate, i.e., "in the patient's best medical interest in light of his medical condition." *Sell* at 181. *Sell* noted that the "specific kinds of drugs at issue may matter here," as different medications may "produce different side effects." *Id.* Dr. Soehner testified that he expected appellant's side effects from the Risperdal to be minimal. Dr. Soehner addressed appellant's specific health circumstances, noting for instance that Risperdal would not be problematic for appellant's high blood pressure. (Tr. at 8, 12.) Dr. Soehner affirmed it was his "medical opinion that the medications that are prescribed are in the defendant's best interest towards gaining competency." (Tr. at 9.) Based on Dr.

Soehner's testimony, the trial court did not clearly err in finding administration of the proposed medication medically appropriate for appellant.

{¶ 20} Thus, our review of the record demonstrates the trial court did not err in granting the petition for involuntary administration of medication. Appellant's first, second, and third assignments of error are overruled.

{¶ 21} Having overruled appellant's three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN, P.J., BROWN and LUPER SCHUSTER, JJ., concur.

_____