[Cite as *State v. Norman*, 2025-Ohio-5070.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240663 |
| | | TRIAL NO. B-2401709 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| LATONYA NORMAN, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The appeal is dismissed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/7/2025 per order of the court.**

By:_____
      **Administrative Judge**

[Cite as *State v. Norman*, 2025-Ohio-5070.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                            :       APPEAL NO.    C-240663
                                                  TRIAL NO.     B-2401709
     Plaintiff-Appellee,          :

     vs.                          :
                                                  *O P I N I O N*
LATONYA NORMAN,                           :

     Defendant-Appellant.         :



Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Appeal Dismissed

Date of Judgment Entry on Appeal: November 7, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan,* Chief Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

{¶1}   Defendant-appellant Latonya Norman was indicted for one count of assault on a police officer under R.C. 2903.13(A), a fourth-degree felony. Norman and the State stipulated to a report stating that Norman was not competent to stand trial, and Norman was ordered to undergo competency-restoration services at Summit Behavioral Health ("Summit").

{¶2}   During the hearing on a petition to involuntarily medicate Norman, the trial court indulged Norman's insistence that she did not need to be involuntarily medicated to restore her competency by allowing Norman to participate in non-medicinal services at Summit for two weeks. The court warned Norman that it would grant the petition for involuntary medication if it received a report that Norman was not participating in those services.

{¶3}   The trial court ultimately made an entry ordering Norman to undergo involuntary medication to restore her competency. Norman now challenges that order on appeal in two assignments of error, arguing that the trial court (1) erred by granting the involuntary-medication petition, and (2) violated her due-process rights because it granted the order without having another hearing regarding the report that the court received concerning Norman's participation, or lack thereof, in non-medicinal services and whether Norman could be restored to competency without medication. Because the involuntary-medication order has expired, the challenges raised in this appeal to that order are moot.  Accordingly, we dismiss the appeal.

## I.  Factual and Procedural History

### A.  The involuntary-medication hearing.

{¶4}   After Norman was indicted, she was released from the Hamilton County Justice Center on an electronic monitoring device ("EMD"). She was deemed

3

incompetent to stand trial on August 9, 2024. Because Summit had no available beds at the time, Norman was agreeable to being released back on an EMD until a bed became available.[1]

{¶5} While Norman was undergoing competency-restoration services at Summit, a Summit physician filed a petition requesting approval to have Norman involuntarily medicated to restore her to competency. The trial court held a hearing on the petition on November 7, 2024.

### *Dr. Edwards testifies that Norman's competency cannot be restored without medication.*

{¶6} Dr. Eric Martin Edwards, a board-certified psychiatrist, testified that he had been treating Norman at Summit for the previous month, and he had met with Norman to complete her initial admission. He stated that he believed that Norman suffered from either schizophrenia or bipolar disorder, but he was leaning toward schizophrenia, and that "she ha[d] been, and can be" "violent, assaultive, threatening, et cetera, once she[] [had arrived] at the ward." He testified that the list of medications that he was requesting to be approved for administration were appropriate for Norman's illness. Of the list of medications, Dr. Edwards testified that he planned to administer Risperidone orally or, if Norman refused to take the Risperidone, then he would administer a related, injectable drug, Haloperidol.

{¶7} Dr. Edwards explained that he had met with Norman twice weekly, but she would become irritable and angry. He stated that Norman would look away from him or leave the room whenever he attempted to discuss the benefits or side effects of

---

[1] Because Norman asked about being refunded the monetary bond she posted, questioned whether there was video evidence, and stated that her attorney was not understanding her side of the story, the trial court stated that she sounded like she was competent. Defense counsel stated that she agreed with the report of incompetency, and the proceedings for that day concluded with the understanding that Norman would await the opening of a bed at Summit.

taking medication because she did not believe that she had a mental illness. He added that it would sometimes sound like Norman was responding to voices in her head. Dr. Edwards further explained that, while Norman never exhibited violence toward him, she had been heard "throwing things around" and "being agitated in her room."

{¶8} Dr. Edwards explained the side effects of Risperidone and that there are medications that would address any side effects to the other medications he recommended. Regarding Risperidone, he explained that any drowsiness that it could cause would be accommodated by administering it in the evening. Dr. Edwards further explained that any muscle spasms or stiffness, akathisia, and dangerously reduced red- or white-blood-cell counts—the latter of which would call for assessing a patient's blood level, but Norman refused to be tested—would be reason to stop administering Risperidone and choose another medication from the list. Dr. Edwards testified that he had never seen neuroleptic malignant syndrome in patients taking Risperidone due to Summit's policy of not administering more than one medication at a time, nor had he ever seen Tardive Dyskinesia in patients, as it is associated with older medications.

{¶9} Dr. Edwards testified that Norman did not have the capacity to give or withhold informed consent for medical treatment, there were no alternatives to medication to treat her, and her competency would not be restored without treatment.

### *Norman testifies that she has not been properly evaluated to warrant being involuntarily medicated.*

{¶10} Norman testified that she did not agree that she should be medicated and informed the court that she would be retaining a private attorney. She further stated that she wanted outpatient treatment since she had previously been out on

bond.[2] The trial court responded that it did not "want to force medication on [Norman]," and if there was another way to "do this without medication" the court wanted to hear it from Norman. Norman responded that Dr. Edwards "did an evaluation" but, because Norman did not complete a particular questionnaire, she did not believe that a proper assessment had been done on her. She added that she declined the evaluation when it was initially attempted because she was "in a nasty mood" and "did not feel like talking" at that time, so she wanted to reschedule it.

{¶11} Norman testified that, as Dr. Edwards had only seen her once, she did not believe that he could determine that medication was best for her. Norman further stated that she did not need to be "fix[ed]" but "need[ed] to express [herself] more," which "might sound hostile," and "that's always been [her] problem." She denied having anger issues, stating that she "really [does not] mess with nobody" and that she is "antisocial," "[i]f anything." Norman then requested outpatient treatment with a counselor.

{¶12} Norman testified that she had been given medications while at Summit. Dr. Edwards confirmed that she had received Clonazepam, Haloperidol, and Benadryl. The trial court asked Norman if she would be willing to take medication to restore her competency, and Norman responded that she "would have to be diagnosed first" and asserted that she had not been examined and diagnosed "with anything."

{¶13} In response to the trial court's questioning, Dr. Edwards explained that he was sent to evaluate Norman "because other people have done evaluations on her and found her incompetent and believe that she needed treatment." He clarified that

---

[2] Her bond was revoked on August 15, 2024, and a capias was issued. A warrant for her arrest was issued, and Norman was taken into custody on October 7, 2024. The trial court reduced her bond on October 10, 2024, and Norman was transported to Summit for restoration services at that point.

Norman was first evaluated and deemed incompetent by the Hamilton County Court Clinic. The court asked Dr. Edwards if it was possible to put Norman on "a treatment plan that [did] not include medication" for the following two weeks. Dr. Edwards responded that he did not expect Norman to be any different in two weeks.

### *The trial court gives Norman an opportunity to prove that she did not need to be involuntarily medicated.*

{¶14} The trial court expressed concern with the number of drugs on the list proposed by Dr. Edwards, that they varied in dosages, and Norman's assertion that she had only been seen by doctors one time while at Summit.[3] The court questioned whether Norman was incompetent. It decided to give Norman two weeks "to show [the doctor] that [she was] able to do this without the medication, without the anger issues, without causing disturbance, going to the sessions, all of the sessions that they recommend, not just some of the sessions."

{¶15} Norman expressed confusion regarding her path to having her competency restored. The trial court responded that the doctors at Summit would ultimately determine whether medication would be necessary to restore her to competency. The court reiterated its concern that Norman may not be incompetent due to the procedural knowledge she exhibited earlier in the proceedings, and that Norman needed to participate in therapy sessions.

{¶16} The trial court asked Dr. Edwards what the sessions would entail over the following two weeks. Dr. Edwards explained that Norman had been meeting with her treatment team weekly, and he had been meeting with Norman individually once a week. Dr. Edwards added that his meetings with Norman "aren't very fruitful"

---

[3] Dr. Edwards' testimony reflects he had more than one conversation with Norman, but Norman would become irritable, angry, and threating, and that Norman would not attend group therapy that was offered.

because she would become "argumentative and disorganized" anytime he would discuss competency with her. Dr. Edwards expressed that "competency is not just knowledge" but "behavior and ability to work with an attorney."

{¶17} The trial court stated that it would get a report in two weeks, and if it was "bad" then the court would grant the involuntary-medication order. Defense counsel stated that Norman needed to be present if the court granted the motion. The court responded that Norman had been present throughout the involuntary-medication hearing and Norman understood the court's pronouncement that it would grant the petition if Norman did not "do what she says she's going to do." The court added that it "was giving her the opportunity" to have the involuntary-medication petition denied by "doing what she said she was going to do --." At that point, the trial court had repeatedly reiterated that it would grant the involuntary-medication order if Norman did not participate in group sessions or acted violently.

### *The trial court grants the petition for involuntary medication.*

{¶18} The trial court entered the involuntary-medication order on November 12, 2024. The entry reflected that the court made all four necessary findings under *Sell v. United States*, 539 U.S. 166 (2003), to grant the order. Absent from the record was when the court received the report from Summit, the manner in which the report was received, or what was contained in the report.

{¶19} Norman timely appealed the trial court's order.

### B. *Norman was restored to competency.*

{¶20} This court granted the State's request to amend the record to show that the trial court found that Norman had been restored to competency on February 7, 2025. The trial court appointed Southern Ohio Forensic Evaluation Services to provide jail-based competency-maintenance services pending trial. Norman, however, posted

8

bond shortly after the trial court found that she had been restored to competency and has remained out on bond since.

**{¶21}** This court also made an order requiring the parties to submit status reports throughout the pendency of this appeal. The second status report, filed by Norman on July 31, 2025, stated there were no pending competency inquiries or forced-medication requests. The docket reflects that Norman's matter is set for trial on November 10, 2025.

## II. *Analysis*

**{¶22}** R.C. 2945.38(B)(1)(c) provides the procedural guidelines for involuntary administration of medication to incompetent defendants. *State v. Jefferson*, 2021-Ohio-2092, ¶ 5 (1st Dist.). However, this statute does not shed light on *whether* a court should order involuntary medication. *Id.*

**{¶23}** The United States Supreme Court recognized that an individual has a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," and that such an interest may be overcome only by an "essential" or "overriding state interest." *State v. Brewer*, 2008-Ohio-6193, ¶ 9 (12th Dist.), quoting *Washington v. Harper*, 494 U.S. 210, 221-222 (1990); *Riggins v. Nevada*, 504 U.S. 127, 134 (1982).

**{¶24}** Under *Sell,* a trial court ensures the protection of a defendant's substantive due-process rights by making four findings before authorizing the involuntary administration of medication: (1) "*important* governmental interests are at stake," (2) "forced medication will *significantly further* those concomitant state interests," (3) "involuntary medication is *necessary* to further those interests," and (4) "administering the drugs is *medically appropriate*." (Emphasis added.) *Sell*, 539 U.S. at paragraph two of the syllabus. An involuntary-medication order may only be

reversed if the trial court's findings are against the manifest weight of the evidence; that is, if they are not supported by some competent, credible evidence. *Jefferson* at ¶ 6.

### A. *Because the involuntary-medication order that is the subject of this appeal was terminated, the appeal is moot.*

{¶25} During the pendency of this appeal, the State filed motions arguing that the issue of the involuntary-medication order is moot. A case becomes moot when the subject matter of the dispute is no longer a live controversy, and no relief can affect the parties' legal rights. *State v. Potter*, 2024-Ohio-4652, ¶ 6 (1st Dist.). The State argues that because the involuntary-medication order that is the subject of this appeal was terminated, there is no longer a live controversy.

{¶26} In *State v. Baird*, 2020-Ohio-2717 (8th Dist.), the court held that an appeal was moot where an involuntary-medication order had been terminated because the defendant could not be restored to competency. *Id.* at ¶ 9. Similarly, in *In re Smith,* 1993 Ohio App. LEXIS 5057 (4th Dist. Sept. 29, 1993), the court stated, "We are unaware of any Ohio case that has held that an expired forced medication order constitutes a collateral legal disability sufficient to preclude a finding of mootness." *Id.* at *4.

{¶27} The same reasoning in *Baird* and *Smith* applies here. Because the forced-medication order that is the subject of Norman's appeal has been terminated, the matter is moot.

### *The exception to the mootness doctrine is inapplicable.*

{¶28} Even if a case is moot, an appellate court may decide the appeal if the "capable of repetition yet evading review" exception applies. This exception only applies in exceptional circumstances when both the following factors exist: (1) the

challenged action is too short in duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *In re R.T.*, 2019-Ohio-618, ¶ 19 (10th Dist.), citing *State ex rel. White v. Koch*, 2002-Ohio-4848, ¶ 13.

**{¶29}** Norman argues her appeal is not moot because she could be subjected to another involuntary-medication order prior to her trial. Norman cites *Steele v. Hamilton Cty. Community Health Bd.*, 90 Ohio St.3d 176, 189, fn. 8 (2000), in support of this proposition.

**{¶30}** Norman's involuntary-medication order expired in February 2025. Because the order expired and was not stayed, or otherwise made capable of being reactivated, the process would need to start anew if Norman's competency was again called into question. *See State v. Swanigan*, 2025-Ohio-4648, ¶ 32-33 (1st Dist.) (competency determinations concern a defendant's present mental condition, requiring a new assessment and hearing process). Should a new order be issued in that proceeding, Norman would need to challenge that order on appeal.

**{¶31}** Further, as of the date of this opinion, the docket reflects Norman's trial, which was initially set for August 20, 2025,[4] was continued until November 10, 2025.[5] But unlike the defendant in *Steele*, Norman remains out on bond pending trial, versus being held in jail or in a mental-health institution. Additionally, Norman has continued to maintain her competency while her case remains pending, and the most recent status report filed with this court by Norman stated that there were no pending competency inquiries or involuntary-medication requests. It, therefore, appears that

---

[4] We take judicial notice of the trial court's October 14, 2025 docket entry reflecting the matter was continued to November 10, 2025, as that entry is outside of the appellate record. *See State v. Wadlington*, 2024-Ohio-1268, ¶ 25, fn. 3 (8th Dist.).

[5] Norman has been granted eleven continuances since the trial court found that her competency was restored in February 2025.

Norman is not at risk of being subjected to another involuntary-medication order.

**{¶32}** While Norman could potentially once again be found incompetent, there must be more than a "theoretical possibility" that she would be subjected to an involuntary-medication order again. *See State v. T.F.*, 2020-Ohio-3766, ¶ 12 (9th Dist.). With the record showing that Norman has maintained her competency for over six months prior to this appeal and there being no pending competency inquiries or involuntary-medication requests, we cannot conclude that she will again be found incompetent *and* subjected to an involuntary-medication order between now and her new trial date.

**{¶33}** As discussed, even if Norman were again found to be incompetent, a new competency assessment and hearing would be required. Further, we cannot presume that a new incompetency finding would be based on the same circumstances as before or that Norman would again be subjected to being involuntarily medicated. Norman, therefore, has not shown that the matter is likely to reoccur yet evade review under the mootness-exception doctrine.

**{¶34}** Because Norman's second assignment of error is related to the expired involuntary-medication order, that issue is also moot.

### III. Conclusion

**{¶35}** Although Norman's trial has remained pending since she was restored to competency in February 2025, there is no reasonable expectation that she will again be deemed incompetent prior to the disposition of her case. Norman, therefore, cannot show that the exception to the mootness doctrine applies, as the concerns raised in her appeal regarding the now-expired involuntary-medication order are not capable of repetition yet evading review. The expired involuntary-medication order also moots Norman's due-process claim.

**{¶36}** We, therefore, dismiss this appeal as moot.

Appeal dismissed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.